Good morning, your honors, and may it please the court, Anshu Bhadrani, assistant federal public defender on behalf of the appellant Terrence Mathis. Your honors, the district court here erred by not suppressing Mr. Mathis's videotaped statement to detectives as well as the physical evidence that was obtained therefrom. This case presents a straightforward application of the Supreme Court's straightforward holding in Edwards that the minute an accused invokes his right to have counsel present at questioning, all further questioning must cease until counsel has been made available. It's difficult to watch Mr. Mathis's interrogation in this case and come away with any conclusion other than that he repeatedly asked for a lawyer. From the minute the detectives enter the interrogation room and for the next four hours after that, Mr. Mathis said, so I can get one now. Can I have a lawyer before I do DNA? I think I should get a lawyer. I think I should ask a lawyer first. Can I get a lawyer now? I'm just saying like I'd rather like a lawyer here now and I want to get a lawyer first. And instead of honoring his request for counsel, detectives misled Mr. Mathis. They informed him of his right to have counsel present, but in the same breath negated that right by noting no lawyer is going to show up here. It's a Saturday. No lawyer is going to be here for you. And so sort of rendered this right to counsel that he has under the Constitution merely illusory because in one breath they said you have it and the next breath they say, no you don't. And so we would argue. I was trying to put this together based on the government's exhibit of the, you know, that included, or I guess it's the government's response to, in opposition to the motion to your client said, he was told before talking to me and have a lawyer here with you during questioning, I'm sorry there was a cut off, so you can have a lawyer with you during questioning now or in the future. Do you understand that? Your client says, so I can get one now? And they, the government, or Officer Libman says, yeah you can get one now, but he's not going to show up here. And as I understand it, that was before Mr. Mathis made any incriminating statements, right? That was fairly early on. That's correct. It was within, I'd say within the first five to seven minutes of him entering the interrogation room, detectives entered, didn't immediately Mirandize him, even though it was pretty clear that he was in custody at that moment, asked him many questions before Detective Libman then proceeded to Mirandize Mr. Mathis. And it was in the course of administering Miranda that that exchange occurred. And in direct response to Detective Libman advising Mr. Mathis of his right to have counsel present during these proceedings, Mr. Mathis responded, so I can get one now. And that too, that clearly is an invocation of his right to counsel. If you look at that statement in context, as Davis, the case that the government cites to says must be done, it's very clear that when it comes during the Miranda period and in direct response to being advised of his right to have counsel present, there's no other way to read or understand that statement than that he wanted counsel present. I had a follow-up question of that. So at some point, I gather Mr. Mathis told the detectives about the Yankee sweatshirt and that it should be in his house. Was that after, that was, he told them that after the exchange that I just referred to? Right. So that statement, so I tried to put together a timeline just from watching because there's no transcript of the four-hour interrogation. So per my record, my note-taking, that exchange occurs very much near the end of the interrogation around 12.07 p.m. At that point, they've elicited a number of incriminating statements from him, received consent from him to search his at that point, asking him to sign a consent form to search his room. And they get that on the basis of him advising them that the sweatshirt will be found in my bedroom at 3030 Northwest 187th Street in Miami Gardens. And yeah, so that comes a little later. But I believe he puts himself in the Yankee sweatshirt a little earlier, a little closer to after he says, so I can get one now. And then places it in a physical location later on during the investigation. So there's multiple, multiple ways that this interrogation sort of violated Mr. Mathis's rights. And so the way the Supreme Court precedent, at least as to the Fifth Amendment, has proceeded, it actually has been pretty logical and it has built, there's been built a body of case law. And so on Miranda, you know, it came out that you have the right to have these procedural protections in place in order to protect your privilege against self-incrimination. And that means that officers in an in-custody situation must issue you your Miranda warnings and solicit a knowing and voluntary and intelligent waiver of that right before they initiate questioning. And then in other words, the Supreme Court explained that there's this second layer of prophylaxis that they're building on top of that, which is if you've invoked your right to have counsel present, regardless of anything else that happens, all questioning must cease and you must be provided counsel before they can talk to you again. And in Davis, you know, Davis, the way the government what Davis does is just clarify a little better the holding in Edwards, which basically, you know, if you've been issued the Miranda warning and if you've clearly waived and proceeded to speaking to the officers, and then at some point during the interrogation want to invoke your right to have counsel present, your invocation needs to be clear and unambiguous. Davis doesn't overrule Edwards in any way, and in fact acknowledges that both Miranda and Edwards provide the controlling law in the courts. And so here, the argument is that he gets into the room, immediately asks, do I need an attorney for anything, is then Mirandized, and then in the middle of his Miranda warnings says, so I can get one now. And so the first question is, did he even knowingly and waive Miranda, because from his questions, it's maybe clear that he didn't understand the right that he was entitled to. And so we, the case, at least out of this circuit, that would be most similar that I submitted in supplemental briefing would be Hart. And in Hart, the defendant in direct response to being read his rights indicated that he he didn't fully understand that he had a right to an attorney there, and the same situation exists here. And then if you continue forward throughout this entire four-hour interrogation of Mr. Mathis, he brings up counsel no less than six times and is each time sort of misled or rebuffed and into believing, yeah, you have this right, but it's not a real right because counsel is not going to be provided to you. And so that's where Edwards comes into play because clearly he's invoking no reasonable officer in these circumstances could read his invocation to be anything other than a clear invocation of his right to counsel. And so it was erroneous for this videotaped interrogation to be admitted at trial, and it served as the only evidence physically linking Mr. Mathis to the scene of the crime and the scene where they found the bullets. And it's on the basis of his statements about where the Yankee sweatshirt would be found that officers even had probable. Sorry, no. It's the evidence, without Mr. Mathis's statements, there's nothing that physically puts him at the liquor store, well, in his car with his phone that night because there is surveillance footage and there is the license plate capture of his vehicle entering and exiting Lighthouse Point. But without that, they can prove his car was there and his phone was used and the calls were made on the phone. Correct. Well, the Google searches, I believe they were made on his phone. But the argument would be, you know, as to the argument as to the physical evidence on the basis of the interrogation is that there's no probable cause to search the address that the officer searched without his statement that evidence of the crime that was being investigated would be found in the room of that particular house because there were multiple other addresses linked to him up until that point. And so I see my time has run. Thank you. We'll hear from you again. Good morning, Your Honors. My name is Shane Butland on behalf of the United States. Also at counsel table is AUSA William Shockley, who tried this case in the district court. Addressing the suppressant issue, there is no dispute that Mathis was in custody at the time this interview took place, nor is there any dispute as to what was actually said, as you have the video recording yourself. So the only issue in this case is whether Mathis's various references to attorneys were clear indications of his right to counsel that rose to the level of clarity that Davis requires. A district court found that they did not, and I asked this court to affirm. As counsel brought up at the very beginning of the interview, Mathis says, am I going to need an attorney for anything? The detective did what he answered how we would expect a detective to answer. He's not going to provide legal advice to a suspect. So he says, I can't tell you what you need or you don't need. I can tell you why I want to talk to you and why you're here. That's all I can do. He then goes on to say, whether you want to speak to me is up to you. At that point, the suspect talks about his injury and having to get to work, and some various pedigree information is obtained from him, including, notably, his address, which was 3030 Southwest 168th Street, which was the address included in the search warrant. Now, as Judge Martin, you indicated, this was a four and a half hour interview. I think what's important, though, is only the first 26 minutes of this interview were introduced at trial. It cut off before there was even any references to attorneys for DNA or for the consent to search the cell phone. So I submit to your honors that really the only two references for counsel that matter in this determination are that first statement when he's requesting legal advice from the detective, when he says, well, I need a lawyer for anything, and then during the actual Miranda warnings, when he's advised you have the right to the presence of an attorney during questioning now and in the future, at which time Mathis says, so I can get one now. That statement suggests he's seeking additional information from the officer about his ability to have an attorney. Well, so that's, I think that's, you know, when I read Edwards versus Arizona and it talks about what's required in the circumstance, you know, it says, you know, there's cannot be further interrogation by the authorities until counsel has been made available to him. And, you know, the response to Mr. Mathis' statement, so can I get one now? And the answer is, yeah, you can get one now, but he's not going to show up here. You know, on the receiving end of that, you might think, well, he's not available now. So, you know. Interestingly, in Miranda, the court expressly addresses this issue. They say that there's no requirement that an attorney be producible on call and, in fact, rejected the suggestion that a patient house lawyer needed to be present in the precincts to advise the suspects. But what about that language in Edwards? You know, we further hold that the accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him. And, I mean, here Mr. Mathis is being told, he's not going to be available to you now. He's not going to come here. I think a prerequisite for that is he needs to make an unequivocal request for counsel in order for that right to attach. And the government's position is that asking, so I can get one now, is not a request for counsel. This is not, you know. I bet if you had been in the room, you would have said it differently. Well, we know that Mathis knows how to invoke his right to counsel because later in the interview, after he's confronted with some incriminating evidence recovered from his phone, he knows how to say, I want a lawyer now. This is a person who had been through the system before. He had a prior manslaughter conviction from 2005, which, according to the PSI, he waived his Miranda rights and provided a confession. Not only that, before the Miranda rights were read to him, he says, oh, I already know these. I'll never forget these. So this is a person who knows how to invoke his rights. And also, in the interview, it becomes clear that he's trying to figure out what information the police officers have on him as well. He asks whether or not you can see him in the car during some of the video surveillance. So this is a savvy individual who's been through the system and clearly knows how to invoke his rights because he did so at the termination of the interrogation. With respect to how could, so I can get one, meaning a lawyer now, how would you make that less ambiguous? I think I would like a lawyer now. You know, I think as opposed to posing it as a question to the detective, you know, I think Davis makes very clear you have to actually invoke your rights to counsel clearly and unequivocally. So I can get one now? Can I have one now? Well, I think the word order is actually important. I think so I can get one now is even different than possibly can I get one now. One of them seeks a little bit more clarification. So I can get a bottle of water now? Ms. Tisa would have me one, wouldn't you? Yeah. So, Your Honor, say to me, you know, you can have a bottle of water at any time you want. And I say, so I can get one now? You know, that would require some additional information from you about whether you would give it to me. If you say, Mr. Butler, you can have a bottle of water anytime you want. And I say, can I get one? That comes closer to the line of actually requesting. Can I get one now? Well, it's in the context of being told that he is afforded the authority of an attorney now or in the future. So an appropriate response seems to be, oh, so I can get one now? Well, I mean, I think the Davis decision makes clear that we don't want these officers trying to interpret, you know, these ambiguous requests from suspects. In adopting the rule that it must be clear and unequivocal, they recognize that there is another consideration, which is the ability of law enforcement to gather information and investigate crimes. You know, they're not supposed to go on some kind of a guessing game in determining whether or not somebody invokes their right. And if they guess wrong, then that leads to suppression. And interestingly, you know, counsel referenced the number of times that counsel was mentioned by Mathis. I guess the first point I would reiterate that really the only two that matter are the first two, pre and during Miranda, because afterwards is when the incriminating statements were made. But in the Davis case, they expressly noted that there were varying approaches adopted by different jurisdictions, state and federally. Some jurisdictions held that any reference to counsel, no matter how ambiguous, was sufficient to invoke the right to counsel. Some held there had to be some minimal threshold level of clarity. And some held that you were to ask clarifying questions. Even understanding all these different approaches, the court said, we are adopting a rule that you need to be clear and unambiguous, and you don't need to ask clarifying questions. If there's a question about whether they're invoking their right, interrogation may continue. And the case cited in the brief, Probst, the 11th Circuit case, conceitedly it's not published. But in that case, the suspect said, I'd rather have a lawyer. And that was found to be an ambiguous request, namely because if a statement is subject to two reasonable competing interpretations, interrogation may continue under Davis, because it's not a clear invocation of that right to counsel. With respect to the linkage between the statement that was made with the address and the address in the search warrant, the only search warrant that really matters with respect to that statement is the search warrant of the house. With the cell phone search warrant, all of the information that was obtained was done pre-Miranda. Though Mathis did say that he had his cell phone on him at the time he was at the liquor store. That didn't make a difference, because there were cell site records that had come into the possession of the police on July 10th, which puts Mathis at the scene. It pinged off of the nearest cell phone tower to the liquor store. That alone would have been a sufficient basis to get a search warrant for the cell phone. With the search warrant of the house, it is true that the statement, my Yankees shirt is in this particular address, was near the end of the interview. That was at about 12.07 PM. However, the pedigree information that was elicited from the detective happened at the very beginning. That happened immediately after Mathis said, do I need a lawyer for anything? He then provided that same address. If you excise the Yankees shirt from that statement, you still are left with the admissible information of his address. I believe that this court has held that pedigree information isn't designed to elicit an incriminating response, so that's not subject to Miranda additional questions on this topic. Thank you very much. So I wanted to start first by addressing some of the case law that the government references and that is also applicable in this situation. I think if you follow the government's reasoning and divorce the statement that's made from its context, then it does become a very confusing standard to apply, which is why the Supreme Court in Davis said that the standard that they were adopting was an objective standard from a reasonable officer in the circumstances. So in Probst, for example, the unpublished opinion cited to by the government, the statement was, I mean, I'd rather have a lawyer around to talk to, you know what I'm saying, have some paper saying something. That was in response to this discussion about maybe coming to a deal or entering into some sort of agreement. And so the context there mattered. In Edwards, the statement was, I want an attorney before making a deal. And in the context within which that statement was made, the Supreme Court held that to be an unequivocal request for counsel. And in Smith v. Illinois, which I would say is relatively similar to the situation at hand here, in the middle of being issued his Miranda warning, the defendant there, and in direct response to being advised of his right to have counsel present stated, yeah, I'd like to do that. And the Supreme Court found that to be an unambiguous, unequivocal request for counsel. And while admittedly that case is a pre-Davis case, the Supreme Court in that opinion made sure to point out that the Davis issues that were percolating in the appellate courts at that point didn't play into the opinion in that case because the statement itself, and when it was made, was unambiguous and unequivocal. And at that point, all questioning needed to cease. As to Davis, you know, the statement that was made in Davis was made an hour into the interview, or 90 minutes into the interview, after the suspect had been Mirandized and had waived Miranda. And then he said, maybe I should talk to a lawyer. And in response, the officers clarified, and he responded, no, I'm not asking for a lawyer. And so Davis is distinguishable from this case on many fronts, and it doesn't do anything to make the case more present. Officers must honor that request. And as for the physical evidence that was obtained as a result of his statements, that the home address that he gives right at the beginning of the interview, the government appears to be arguing that that's pedigree information, or like booking questions that were asked. We would argue that that booking question analysis is inapplicable here. From the minute these officers entered the room, they had him on a DNA warrant, but it was clear that their intention was to question him and to obtain information from him. And the questions that they asked him go beyond mere, you know, pedigree questions or booking questions. They get into, where is your brother living? Does your brother look like you? You know, you know, this information that was beyond booking, and they weren't arresting him at that point, and they made that very clear to him as well. And the mere giving of that address doesn't do anything in terms of probable cause for a search warrant to search the home, because at that point, officers were investigating the scene of a murder at Lathouse Point, and they were looking for evidence of that crime. And the only evidence of that crime that can be linked to that 3030 address is the Yankee sweatshirt. Otherwise, the car was registered to a completely separate address. And up until that point in the investigation, the car was sort of a key piece, and it was sort of how they came upon Mr. Mathis to begin with. And so there was a separate address for the car. There's a separate address that they surveilled him at. And there was yet another address that they picked him up at in order to execute the statement, there is no probable cause for the house search. Before you run out of time, why did they stop questioning? Because they got everything they needed from him four and a half hours into the interview. At that point, they had gotten. He placed himself at the scene. He placed himself at the liquor store. He placed himself in the car. He stated he did not confess. They got everything they wanted. Well, they got, you know, access to his phone, access to him, access to a room in a house that he was staying. Why did they stop? They got information, but why did they stop questioning him? Their argument is because they believed that he had invoked at that point, but he said things that were not really different from what he said at the end of the interview. And the only difference between what he said earlier and what he said later is that at that point they got what they needed from him. So I see that my time has run. We would ask that you reverse the decision of the district court and remand. Thank you. Thank you.